## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

BANILLA GAMES, INC. and GROVER
GAMING, INC.,

          Plaintiffs,

   v.

FREEDOM 2410 INC., and
BHAVESH HASMUKHBHAI PATEL,

          Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT

Plaintiffs Banilla Games, Inc. ("**Banilla**") and Grover Gaming, Inc. ("**Grover**") (collectively, "**Plaintiffs**"), by counsel, states as follows for its Verified Complaint (the "**Complaint**") against the defendants, Freedom 2410 Inc. ("**Freedom**"), and Bhavesh Hasmukhbhai Patel ("**Patel**"), (collectively, the "**Defendants**").

## INTRODUCTION

1.     Grover owns a federal copyright registration, number PA0002293309, which it obtained on May 24, 2021, for the computer file and associated audiovisual effects used in its Fusion 4 video game (the "**Copyrighted Work**").

2.     All of the claims asserted herein arise out of, are based on, or relate to Defendants' use, distribution, public display, and/or sale of the Copyrighted Work without Grover's consent. Plaintiff sues for copyright infringement under the United States Copyright Act, including preliminary and permanent injunctive relief, Plaintiffs' damages and/or Defendants' profits from Defendants' willfully infringing conduct, and other monetary relief.

3.      In addition, Banilla brings ancillary claims related to its loss of sales and revenues from the sale of the software, the Copyrighted Work.  Banilla serves as the exclusive distributor of the Copyrighted work.

## PARTIES, JURISDICTION, AND VENUE

4.      Grover is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina, and is authorized to transact business in Virginia.  Grover creates, designs, develops, and manufactures the software, 3-D artwork, and audiovisual effects for various electronic games in various markets, such as the skill-based redemption and electronic pull-tab markets.  Relevant to the claims raised herein, Grover creates, designs, and develops the software, 3-D artwork, and audiovisual effects for certain electronic games of skill distributed by Banilla and purchased for use primarily in the Georgia Lottery's Coin Operated Amusement Machine ("**COAM**") market.

5.      Banilla is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina, and is authorized to transact business in Virginia.  Banilla designs, develops, and distributes products for various board, nudge, skill, redemption, and amusement game markets.

6.      Freedom is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business at 2410 Deep Creek Boulevard, Portsmouth, Virginia 23704-6222.  Upon information and belief, Freedom's officers and directors are residents of the state of Virginia.  Freedom owns and operates at least one convenience store, Quick Save Food Mart, 2410 Deep Creek Boulevard, Portsmouth, Virginia 23704-6222. Freedom, as owner of Quick Save Food Mart, has an active license with the Virginia Alcoholic

- 2 -

Beverage Control Authority, License No. 755948.  Freedom is a provider of electronic skill games, making such games available for play by eventual end-users.

7.      Defendant Patel is a Virginia resident and Director and Registered Agent of Freedom.  Defendant Patel's registered agent and principle address is 3337 Arboretum Trail, Chesapeake, Virginia 23321-4588.  He is an active participant in, and authorized and approved, the unlawful and tortious acts described herein, including, without limitation, the unauthorized use of Plaintiffs' copyrighted material as described herein.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as Plaintiffs allege claims arising under the laws of the United States, including, but not limited to, federal copyright law.

9.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a), as the Plaintiffs and Defendants are citizens of different states and the claims asserted herein exceed $75,000.

10.      This Court has subject matter over any state law claims asserted herein pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

11.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (2), and (3) and 1400(a) because Defendants reside and operate their business in this District, because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because a substantial part of the property that is the subject of this action is situated in this District; specifically, in the Tidewater area.

## FACTS

### GROVER'S BUSINESS AND ITS INTELLECTUAL PROPERTY

12.     Since 2013, Grover has invested millions of dollars in developing high-quality and reliable electronic games of skill.  Indeed, Grover has hired a growing team of dedicated employees who develop from scratch all design and software components of Grover's games in-house, while acting within the scope of their employment, including the games' source code, object code, 3-D and other artwork, static images, and other visual and audiovisual effects that help to make Grover's games an enjoyable experience for the end user.  In creating these products, Grover did not copy any of the artwork, static images, or audiovisual effects from another game or a non-Grover author.

13.     Grover also has invested substantial time, effort, and resources in marketing its games to customers and providing top-level customer service to those customers who purchase Grover's games.

14.     Grover's games are well-respected by its customers (e.g., the operators who purchase the games) and end-users (e.g., the individuals who play the games), each of whom have come to expect high-quality games and top-notch customer service from Grover.

15.     In addition, Grover has used the trademark "FUSION" in commerce throughout the United States continuously since February 28, 2017 in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of the Fusion Games, including the Copyrighted Work.  Attached as **Exhibit A** are representative samples of materials showing Plaintiff's use of the "FUSION" mark (the **"Mark"**) in connection with the Fusion Games.

16.     Grover has applied for registration of the Mark on the Principal Register and is the owner of United States Trademark Application Serial No. 90850171 filed in the United States

Patent and Trademark Office ("USPTO") on July 27, 2021 for the trademark "FUSION" (the **"Application"**).  A copy of the application is attached as **Exhibit B**.

17.     By investing these resources over the last eight (8) years, Grover has established itself as a global leader in the electronic gaming industry.  As a global leader, Grover protects its business through proper protection, including registration, of its copyrighted works, protection of its trade secrets, and protection of its intellection property, including through enforcement actions, such as this one, to insure its rights and intellectual property assets are not infringed or misappropriated.

18.     Indeed, in addition to the Copyrighted Work, Grover owns multiple copyrights in and to the computer files associated with its video games.  Grover actively protects its copyrighted works by having at least 20 active, registered copyrights surrounding its business and products.

19.     Grover also takes commercially reasonable measures to ensure the confidentiality of its proprietary software, including the software associated with the Copyrighted Work.  In this regard, Grover: (a) maintains and protects its source code as a trade secret; (b) takes steps to prevent end-users from accessing its source code through a process called "obfuscation;" and (c) actively protects the artwork used in its computer files and software, including the Copyrighted Work, by creating, registering, and maintaining its copyrights in both the static images and the audiovisual effects used in its software.

## THE COPYRIGHTED WORK

20.     Among its various products, Grover has created, owns, and sells, its "Fusion" line of games (the **"Fusion Games"**), which games are comprised of software, both source code and object code, and artwork that make the Fusion Games well-known in the marketplace and

distinctive to Grover. The Fusion Games' artwork includes both static images, as well as the audiovisual effects that connect those static images.

21.     The Fusion Games, currently in their fifth generation and comprising five different games, contain material wholly original to Grover, and is copyrightable subject matter under the laws of the United States.

22.     Relevant to the instant dispute, Grover owns a federal registration in the Copyrighted Work. A true and correct copy of the registration for the Copyrighted Work is attached hereto as **Exhibit C**.

23.     Grover distributes its Fusion Games, including the Copyrighted Work, in stand-alone gaming cabinets, or as independent software, sold through its exclusive distributor, Banilla. End-users purchase these cabinets or the software, and a particular version of the Fusion Games, such as the Copyrighted Work, from Banilla and then offer them for use by end-users primarily in the Georgia COAM market.

### GROVER'S TRADE SECRETS

24.     Computer software, like the Fusion Games, is comprised of source code and object code. Source code is created by a computer programmer with a text editor and is readable by humans. Object code[1] is the output of a source code compiled into a machine code that contains a sequence of machine-readable instructions.

25.     With respect to the source code and object code associated with the Fusion Games, Grover creates the source code and saves it in multiple "library" files that are accessible only to employees who need access to them and who have executed a confidentiality agreement. Pursuant

---

[1] Object code is a series of 1s and 0s, and is generally only readable by machines. While a human might be able to understand the patterns with enough study, doing so would take a significant amount of time.

to the terms of this confidentiality agreement, Grover's employees are prohibited from disclosing any information concerning Grover's "confidential information," including source code.  This obligation survives the termination of any employee's employment with Grover.

26.     Using a computer program known as a compiler, Grover transforms these human-readable library files into machine-readable object code, which object code forms the basis for the executable file that launches each game.

27.     The compiler includes an obfuscation feature,[2] which allows Grover to build redundancies into each version of its Fusion Games to prevent tampering and reverse engineering of its source code.  Grover obfuscated the course code for each of its Fusion Games, including Fusion 4 Game that is associated with the Copyrighted Work.

28.     A certain "library" file controls Grover's activation mechanism ("**Activation Mechanism**").  The Activation Mechanism is responsible for determining whether the Fusion Games are authentic.

29.     Grover takes commercially reasonable measures to maintain its "Library" files, including both its source code and its Activation Mechanism.  These Library files are confidential and proprietary to Grover and are maintained as trade secrets (together, the "**Source Code**").

30.     In particular, access to these "Library" files is limited to employees who have a need to know the information and who have executed confidentiality agreements.

31.     Moreover, because Grover obfuscates its source code, it is not generally known outside of Grover and further allows Grover to maintain its source code as a trade secret.  Indeed,

---

[2]  Obfuscation is the deliberate act of creating object code with redundancies, so that it is even more difficult for humans to read and understand.

because Grover obfuscates its source code, it would be very difficult for someone, even a sophisticated computer programmer, to re-create the exact logic used in the source code.

32.     Thus, Grover's "Library" files derive independent economic value by remaining secret.  Indeed, Grover's Source Code, and its secrecy, allows Grover to maintain its competitive advantage in the marketplace.

## BANILLA'S BUSINESS

33.     Banilla, as the exclusive distributor, sells and distributes Fusion Games.  Through Banilla, the Fusion Games, including the Copyrighted Work, reaches end-users, who, in turn, place the Fusion Games in their respective places of business.

34.     In order to obtain the Fusion Games, among others, and thus the Copyrighted Work, an individual or business must purchase the Fusion Games directly from Banilla or another legitimate purchaser of the Fusion Games.

## DEFENDANTS' INFRINGEMENT OF THE COPYRIGHTED WORK AND OF THE MARK

35.     In February 2022, Plaintiffs learned that Defendants were in possession of, and using, unauthorized, pirated, or hacked versions of the Copyrighted Work and allowing such counterfeited machines and unauthorized games to be used by their customers (i.e., end users). Pirated software is the unauthorized use, copying, or distributions of copyrighted software and can take many forms, including the unauthorized, illegal access to protected software and/or reproducing or distributing counterfeit or otherwise unauthorized software.

36.     After learning of Defendants' use of at least one unauthorized, pirated, and counterfeit machine, Banilla and Grover exercised reasonable diligence and verified that such unauthorized use of pirated or counterfeited machines by Defendants was occurring and continuing.

37.     Upon information and belief, Defendants purchased at least one (1) stand-alone gaming cabinets containing unauthorized, pirated, and/or hacked versions of the Copyrighted Work on the secondary market (the "**Illicit Games**").  These cabinets and the Illicit Games therein were neither created, sold, nor otherwise authorized or licensed by Plaintiffs.

38.     Upon information and belief, the Illicit Games are the product of a third party unpackaging, decompiling, and de-obfuscating Grover's Trade Secrets.  Using this process, the third-party was able to gain access to Grover's multiple library files, which contain Grover's proprietary source code and Trade Secrets.  In other words, the third party was able to misappropriate Grover's Trade Secrets by undoing the deliberate and intentional steps Grover takes and had taken to prevent third parties from ascertaining Grover's Trade Secrets.

39.     Upon information and belief, through this certain third parties' efforts, they were able to bypass Grover's validation logic by altering the Activation Mechanism and market and sell hacked versions of the Illicit Games.

40.     Upon information and belief, the hacked/pirated/counterfeit Illicit Games, are sold for significantly less than genuine products.  This model allows the misappropriating third party to undercut Banilla's market share and steal Banilla's profits.  In addition, the Defendants are able to increase their profits at the expense of Banilla and Grover.

41.     The Defendants purchased at least one of the Illicit Games that knowingly misappropriated Grover's Trade Secrets and Copyrights.

42.     Defendants purchased the Illicit Games for the purpose of displaying them and offering them for use by end-users entering Defendants' location.  Upon information and belief, Defendants purchased the Illicit Games for only a fraction of the amount at which genuine games

containing the Copyrighted Work cost, thereby increasing their profits. Moreover, Plaintiffs' profits have thereby decreased as a result of the Illicit Games.

43.     Defendants' Illicit Games are nearly identical to the Copyrighted Work, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Work, and the artwork in the Illicit Games present dimmer artwork than the Copyrighted Work.

## THE ILLICIT GAMES INFRINGE THE COPYRIGHTED WORK

44.     Grover created, designed, and owns the audiovisual effects that tie together the artwork used in the Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

45.     The Copyrighted Work is wholly original, and Grover is the exclusive owner of all right, title, and interest, including all rights under copyright law, in the Copyrighted Work.

46.     Defendants have published and publicly displayed unauthorized and unlicensed reproductions of the Copyrighted Work, without Grover's authorization, consent, or knowledge, and without any compensation to Grover. In particular, Defendants have published and publicly displayed unauthorized and unlicensed versions of the Copyrighted Work each time consumers play their Illicit Games.

47.     As a result of Defendants' willful actions, Grover has been damaged, and continues to be damaged, by the unauthorized publication and public display of the Copyrighted Work. Defendants have never accounted to or otherwise paid Grover for their use of the Copyrighted Work.

48.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

## THE ILLICIT GAMES INFRINGE THE SOURCE CODE

49.    Grover considers its Source Code confidential information and trade secrets and has takes reasonable steps to keep its Source Code secret.

50.    Defendants purchased the Illicit Games, which actually misappropriated Grover's Source Code.

51.    Defendants' actions, including Defendants' use, marketing, and/or selling of the Illicit Games also misappropriates Grover's Source Code.

52.    The Defendants' foregoing actions, including the improper access to and use of Grover's Source Code was done without Grover's permission.

53.    Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

54.    Defendants' acts have caused, and will continue to cause, Grover to lose profits.

## DEFENDANTS' IMPACT ON GROVER AND BANILLA

55.    Banilla is Grover's exclusive distributer of Fusion Packages.  Banilla sells Fusion packages to end users, who, in turn, use them in their places of business.

56.    Before Defendants began offering and displaying the Illicit Games, consumers associated any Fusion Package with Grover and Banilla.

57.    Defendants' Illicit Games are similar in every way to the authentic Fusion 4 Games sold and distributed by Banilla.  For example, the following chart shows images from Grover's Fusion Package 4 games in the left column, and upon information and belief, images similar to that of Defendants' Illicit Games in the right column:



58.     Consumers likely will associate Defendants' Illicit Games with Banilla and Grover because, *inter alia*, Defendants' Illicit Games mimic in every way the experience provided by the Fusion 4 Games.

59.     Defendants have engaged in an unfair method of competition and unfair trade practice.

60.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and Grover for which Banilla and Grover have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
*(Grover – Copyright Infringement)*

61.     Plaintiffs incorporate the preceding paragraphs by reference.

62.     The Copyrighted Work is motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

63.     Grover is the exclusive owner of the rights under copyright in the Copyrighted Work.  Grover owns a valid copyright for the Copyrighted Work.  *See* Ex. A.

64.     The Copyrighted Work was created in house by Grover employees acting within the scope of their employment.  None of these employees have any contractual rights to ownership of the Copyrighted Work as such Copyrighted Work constitutes a work made for hire.

65.     The Copyrighted Work was registered within 5 years of the first publication of the Copyrighted Work.

66.     Defendants included have publicly displayed and published unauthorized, pirated, and/or hacked copies of the Copyrighted Work in the Illicit Games, and have done so without Grover's permission.

67.     Upon information and belief, Defendants' infringing conduct was, and continues to be, willful and with full knowledge of Grover's interest in the Copyrighted Work.

68.     As a direct and proximate result of Defendants' willful infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to Defendants' infringing use of the Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from the infringements, as will be proven at trial.

69.     In all events, Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.  Grover is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

## SECOND CLAIM FOR RELIEF
*(Grover – Contributory Copyright Infringement)*

70.     Plaintiffs incorporate the preceding paragraphs by reference.

71.     Defendants have no authorization, permission, license, or consent to use and/or utilize and exploit the Copyrighted Work in the Illicit Games at issue.

72.     Defendants had knowledge the Illicit Games are unauthorized, pirated, and hacked copies of the Copyrighted Work.

73.     Defendants materially contributed to the continued infringement in Plaintiff's Copyrighted Work by continuing to provide the Illicit Games in commerce.

74.     The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in complete disregard of Plaintiffs' rights.

75.     As a direct and proximate result of Defendants' willful infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to Defendants' infringing use of the Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' profits from the infringements, as will be proven at trial.

76.     Plaintiffs are also entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

**THIRD CLAIM FOR RELIEF**
*(Grover and Banilla – False Designation of Origin and Unfair Methods of Competition)*
*15 U.S.C. § 1125*

77.     Plaintiffs incorporate the preceding paragraphs by reference.

78.     Banilla is Grover's exclusive distributor of Grover's Fusion 4 Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

79.     Defendants have marketed, displayed, presented, and offered for use to consumers their Illicit Games, which mimic the Fusion 4 Games, in interstate commerce.  The Illicit Games were neither authorized, created, sold, licensed, sponsored, nor distributed by Plaintiffs.

80.     Defendants are passing off their Illicit Games as those authorized, created, licensed, sold, and/or distributed by Plaintiffs.

81.     Defendants' Illicit Games are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of their Illicit Games. Actual and potential consumers, upon encountering Defendants' Illicit Games, are likely to mistakenly believe that Defendants' Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Plaintiffs.

82.     By their unauthorized use conduct, Defendants have engaged in unfair competition with Plaintiffs, false designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

83.     Upon information and belief, Defendants' actions have been, and continue to be, willful and with intent to profit from the goodwill established by Plaintiffs in the Fusion Package. Defendants' actions are intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

84.     Grover and Banilla are entitled to an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs, under 15 U.S.C. §§ 1116-17, as well as pre- and post-judgment interest.

85.     Defendants' conduct is causing immediate and irreparable harm and injury to Grover and Banilla, and to their goodwill and reputation, and will continue to both damage Grover and Banilla and confuse the public unless enjoined.  Grover and Banilla have no adequate remedy at law.   Grover and Banilla are thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

### FOURTH CLAIM FOR RELIEF
*(Grover and Banilla – Common Law Unfair Competition)*

86.     Plaintiffs incorporate the preceding paragraphs by reference.

87.     This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of the Commonwealth of Virginia.

88.     Defendants are passing off their Illicit Games as those authorized, created, licensed, sold, and/or distributed by Plaintiffs, thereby causing harm to the reputation and goodwill of Banilla.

- 16 -

89.     Upon information and belief, Defendants' acts of common law passing off, unfair competition and deceptive trade practices have been done willfully and deliberately.

90.     Defendants have profited and been unjustly enriched by revenue from the Illicit Games that Defendants would not otherwise have made but for their unlawful conduct.

91.     Plaintiffs have been damaged by Defendants' passing off and unfair or deceptive acts or practices in an amount in excess of $75,000, exclusive of interest and costs.

92.     Upon information and belief, Defendants' actions have been, and continue to be, willful, with intent to profit from the goodwill established by Plaintiffs in the Fusion Package 4 games, and with reckless indifference to the rights of Plaintiffs in the Fusion Package 4 game.

93.     As a result of Defendants' passing off and unfair trade practices, Plaintiffs are entitled to an award of its damages, including enhanced damages, costs, reasonable attorneys' fees, and punitive damages, as well as injunctive and equitable relief.

## FIFTH CLAIM FOR RELIEF
*(Grover and Banilla – Statutory Infringement under Va. Code § 59.1-92.12)*

94.     Plaintiffs incorporate the preceding paragraphs by reference.

95.     Virginia Code § 59.1-92.12 makes liable "any person who (i) uses in a manner likely to cause a consumer confusion, mistake, or deception as to the source or origin of any goods or services, without the consent of the owner of a registered mark, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of such goods or services or (ii) reproduces, counterfeits, copies or colorably imitates a registered mark and applies such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, advertisements, or any item intended to be used in a manner likely to cause a consumer confusion, mistake, or deception as to

the source or origin of any goods or services in connection with the sale, offering for sale, distribution, or advertising of such goods or services."

96.     The Copyrighted Work is federally registered.  The Copyrighted Work is also easily recognizable and distinguishable in the gaming/amusement business market.

97.     Defendants have used the Copyrighted Work in connection with the Illicit Games with Plaintiff's consent or authorization. Defendants' use, including the sale, offering for sale, and/or distribution of the Illicit Games in commerce, is likely to cause confusion and mistake in the mind of the public, leading consumers and customers of Plaintiff to believe that Defendants' product emanates or originates from Plaintiffs, or that Plaintiffs have approved, permitted, licensed, or otherwise associated themselves with Defendants or their Illicit Games.

98.     Defendants, through their continued and unauthorized use of the Copyrighted Work, are unfairly benefiting from and misappropriating Plaintiff's goodwill and reputation, resulting in serious, substantial, and irreparable injury to the Plaintiffs and the public.

99.     At all times relevant hereto, Defendants had actual and direct knowledge of Plaintiff's prior use and ownership of the Copyrighted Work.  Defendants, with this knowledge, continue to utilize and/or offer for sale or sell the Illicit Games.  Defendants' conduct is therefore willful and directly reflects Defendants' intent to exploit the goodwill and strong brand associated with the Copyrighted Work.

**SIXTH CLAIM FOR RELIEF**
*(Grover – Misappropriation of Trade Secrets Pursuant to 18 U.S.C. 1836(b))*

100.    Plaintiffs incorporate the preceding paragraphs by reference.

101.    Grover's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being

readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

102.    Grover's confidential and trade secret information has been and continues to be the subject of reasonable measures to keep such information secret.

103.    Defendants misappropriated such confidential and trade secret information of Grover in connection with the distribution and sale of the Illicit Games.

104.    Defendants, at the time of use, knew, or had reason to know the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

105.    As a result of Defendants' misappropriation, Grover has been and continues to be damaged and irreparably injured, including, without limitation, the loss of sales and profits it would have earned but for Defendants' actions, and damage to Grover's reputation among potential and existing customers, business partners, investors, and in the industry in general.

106.    Defendants' misappropriation is willful and malicious and thereby entitles Grover to an award of exemplary damages.

107.    Defendants' misappropriation of Grover's confidential and trade secret information has caused and will continue to case Grover irreparable and substantial injury and therefore cannot be fully redressed through damages alone.  An injunction prohibiting Defendants from further use or disclosure of Grover's confidential and trade secret information is necessary to provide Grover with complete relief.

### SEVENTH CLAIM FOR RELIEF
*(Grover – Violation of Virginia's Uniform Trade Secrets Act under Va. Code § 59.1-336 et al.)*

108.    Plaintiffs incorporate the preceding paragraphs by reference.

109.    Without Grover's consent or permission, and in violation of Section 59.1-336 *et seq.* of the Virginia Code (Virginia Uniform Trade Secrets Act) (the "**VUTSA**"), Defendants misappropriated Grover's confidential and proprietary trade secrets, including, but not limited to, its Source Code.

110.    Grover's confidential and trade secret information is not generally known to or readily ascertainable by proper means to other people.

111.    Defendants, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

112.    Defendants misappropriated Grover's confidential information and trade secrets, including, but not limited to its Source Code, by utilizing the Illicit Games through marketing, use, and either selling, or offering to sell, the Illicit Games into the open market.

113.    The aforementioned trade secrets have independent economic value from not being generally known to other persons.

114.    Grover has taken reasonable precautions to maintain its confidential and trade secret information as confidential information, including but not limited to limiting access to such confidential and trade secret information.

115.    In Violation of the VUTSA, Defendants misappropriated Grover's trade secrets to benefit themselves.

116.    Defendants actions in misappropriating Grover's trade secrets were done in a knowing, willful, and malicious manner.

117.    As a result of Defendants' actions, Grover has been damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, public display, and sale of

the Illicit Games.  Defendants have never accounted to or otherwise paid Grover for its use of the Illicit Games.

118.    Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

119.    Defendants' actions have caused, and will continue to cause, Grover to lose profits.

120.    Plaintiffs are entitled to actual damages on account of Defendants' misappropriation or a reasonable royalty for Defendants' misappropriation.

121.    As a result of Defendants' misappropriation, Grover is entitled to an award of its damages, costs, reasonable attorneys' fees, and punitive damages, as well as injunctive and equitable relief.

WHEREFORE, Plaintiffs pray of the Court as follows:

1.    For judgment that Defendants, Freedom 2410 Inc. and Bhavesh Hasmukhbhai Patel:

(a)    have violated the Copyright Act, 17 U.S.C. §§ 101 *et seq.;*

(b)    have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

(c)    have violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

(d)    have engaged in unfair competition in violation of the common law of the Commonwealth of Virginia;

(e)    have violated *18 U.S.C. 1836(b)*

(f)    have violated Virginia Code § 59.1-92.12; and

(g)    have violated Virginia Code § 59.1-336 *et seq.*

2.      That an injunction be issued enjoining and restraining Defendants, Freedom 2410 Inc. and Bhavesh Hasmukhbhai Patel, and each of their officers, agents, employees, attorneys, and all those in active convert or participation with it from:

> a.    Defendants' continued use, publication, and display of the Copyrighted Work;
>
> b.    Defendants' continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and
>
> c.    Defendants' use of the Illicit Games;

3.      For the entry of an order pursuant to 17 U.S.C. § 503(a) that Defendants and their officers, employees, agents, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with Defendants, immediately deliver to the Court for impoundment the Illicit Games violating Plaintiff's, Grover Gaming, Copyrighted Work, together with an accounting, to be provided to Plaintiffs, of: (1) the number of such Illicit Games in Defendants' possession, custody, or control; (2) where each Illicit Game was found; (3) the identity of the individual or individuals having possession, custody or control of each Illicit Game at the time it was found; and (4) a sworn explanation of how each Illicit Game was obtained, duplicated, or distributed, including the identity of all persons involved in such activity for each Illicit Game;

4.      For the entry of an order directing Defendants, Freedom 2410 Inc. and Bhavesh Hasmukhbhai Patel, to deliver up for destruction to Plaintiffs all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Work, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b);

5.      For an assessment of: (a) damages suffered by Plaintiffs, trebled, pursuant to 15 U.S.C. § 1117(b); or, in the alternative, (b) all illicit profits that Defendants derived while using counterfeits and/or infringements of the Copyrighted Work, trebled, pursuant to 15 U.S.C. § 1117(b); or, in the alternative, (c) statutory damages, awarded to Plaintiffs pursuant to 15 U.S.C. § 1117(c), of up to $2,000,000 for each trademark that Defendants have counterfeited and/or infringed, as well as attorneys' fees and costs; and (d) an award of Plaintiff's costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and (e) profits, damages and fees, to the full extent available, pursuant to *18 U.S.C. 1836(b)* and/or Virginia Code § 59.1-92.12; and (f) punitive damages to the full extent available under the law;

6.      For any damages awarded to Plaintiffs as allowed by law, including enhanced and punitive damages;

7.      For a trial by jury on all issues so triable; and

8.      For such other and further relief as the Court may deem just and proper.


Dated: March 8, 2022                        BANILLA GAMES, INC. and GROVER GAMING, INC.

                                            ___/s/ Stephen M. Faraci, Sr._____
                                            Stephen M. Faraci, Sr., Esquire (VSB #42748)
                                            Robert N. Drewry, Esquire (VSB #91282)
                                            WHITEFORD, TAYLOR & PRESTON, LLP
                                            1021 E. Cary Street, Suite 1700
                                            Richmond, Virginia 23219
                                            Telephone:     (804) 977-3307
                                            Facsimile:     (804) 977-3298
                                            E-Mail:        sfaraci@wtplaw.com
                                            E-Mail:        rdrewry@wtplaw.com

                                            *Counsel for Plaintiffs, Banilla Games, Inc. and Grover Gaming, Inc.*

## VERIFICATION

STATE OF NORTH CAROLINA

COUNTY OF PITT

Garrett Blackwelder, being duly sworn, deposes and says that he is the President of Banilla Games, Inc. and Grover Gaming, Inc. and as such is authorized to make this verification that he has read the foregoing VERIFIED COMPLAINT and the same is true of his own knowledge, except as to those matters and things stated on information and belief, and, as to those, he believes them to be true.

_____
Garrett Blackwelder, President
Banilla Games, Inc. and Grover Gaming, Inc.

PITT COUNTY, STATE OF NORTH CAROLINA

Sworn to (or affirmed) and subscribed before me this day by Garrett Blackwelder.

Date: 3/8/22

_____
Signature of Notary Public

My commission expires: 9-27-2025

MARC C DOWNING
NOTARY PUBLIC
PITT COUNTY, NC
My Commission Expires 9-27-2025